IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARGO DIANE HOCKING, ALEX HAZZAA,

        Plaintiffs,

    v.

CITY OF ROSEVILLE, PATRICK BLAKE, CHRIS NOWICKI, and DOES 1 through 100, inclusive,

        Defendants.

_____/

No. Civ. S-06-0316 RRB EFB

**MEMORANDUM OF OPINION AND ORDER**

Margo Diane Hocking ("Hocking") and Alex Hazzaa ("Hazzaa") (collectively "Plaintiffs") brought an action against the City of Roseville ("City") and Officers Patrick Blake ("Blake") and Chris Nowicki ("Nowicki") alleging civil rights violations and state law claims. The City moves for summary adjudication. For the reasons stated below, the court GRANTS the motion.[1]

_____

[1] Inasmuch as the court concludes the parties have submitted memoranda thoroughly discussing the law and evidence in support of their positions, it further concludes oral argument is neither necessary nor warranted with regard to the instant matter. See Mahon v. Credit Bureau of Placer County, Inc., 171 F.3d 1197, 1200 (9th Cir. 1999)(explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required).

# I.   BACKGROUND

On February 14, 2004, at approximately 12:00 a.m., Officers Blake and Nowicki effected a traffic stop of a BMW automobile on suspicion of driving under the influence after allegedly observing the BMW swerving.  First Amended Complaint ("FAC") ¶¶ 4, 22-23, 25.[2]  Hazzaa was the driver, Hocking was seated in the front passenger seat and Travis, Hocking's son, was seated in the rear passenger seat.[3]  Id. ¶ 22.  Officer Blake approached the driver's side window and asked Hazzaa whether he had been drinking.  Id. ¶¶ 24-25.  When Hazzaa replied that he had drank one beer, Officer Blake directed him to get out of the vehicle so he could administer field sobriety tests.  Id. ¶¶ 25, 27-28.  After Hazzaa allegedly performed poorly on these tests, Officer Blake attempted to administer a Passive Alcohol Screening test (i.e., breath test), warning Hazzaa that his refusal to take the test would result in his arrest for driving under the influence.  Id. ¶ 28-30.  Following Hazzaa's refusal to take the test, he was arrested, handcuffed and escorted to the patrol car.  Id. ¶ 30.

---

[2] Hocking, Hazzaa and Hocking's son, Travis, were returning home from dinner at Black Angus and drinks at the Owl Club.  FAC ¶ 21.

[3] Hocking and Hazzaa are married and reside in Sacramento County.  Compl. ¶ 20.  Hocking is Caucasian while Hazzaa is of Lebanese descent.  Id.

Officer Blake then returned to the BMW and advised Hocking that she would need to find a ride home since she was too drunk to drive.  FAC ¶ 31.  However, before Hocking could contact anyone, Officer Blake directed her to get out of the BMW.  <u>Id.</u> ¶¶ 34-35.  When Hocking did not respond quickly enough, Officers Blake and Nowicki pulled her from the BMW and forcefully placed her arms behind her back.  <u>Id.</u> ¶ 35.  Hocking was then wrestled to the ground after she allegedly attempted to pull her arms away.  Id.[4]  At this time, Travis got out of the BMW and pleaded with the officers to stop hurting his mother.  <u>Id.</u> ¶ 37.  Officer Nowicki then allegedly slammed Travis into the BMW, "body-slammed" him into the ground, and choked him.  Id.  Travis subsequently broke free and fled across the freeway.  <u>Id.</u> ¶ 39.  Sometime later, Travis was located, arrested, and brought to jail in Roseville along with Hazzaa and Hocking.  <u>Id.</u> ¶ 40.  At the jail, Hazzaa blew into an Intoxilyzer 5000 machine, which calculated his blood-alcohol level at 0.00%.  <u>Id.</u> ¶ 42.  A blood sample was also taken and later revealed that Hazzaa's blood alcohol level was 0.00%.  <u>Id.</u>

On March 4, 2004, the Placer County District Attorney's Office filed a criminal complaint against Hocking and Hazzaa.

---

[4]  During this altercation, Officer Blake allegedly told Hocking: "take that for the Arab."  FAC ¶ 36.

FAC ¶ 45.  Hocking was charged with, among other things, public intoxication and resisting arrest and Hazzaa was charged with driving under the influence.  Id.  On January 23, 2006, a Placer County Superior Court judge dismissed all criminal charges against Hocking and Hazzaa.  Id. ¶ 48.  On February 14, 2006, Plaintiffs filed the instant action alleging civil rights violations and state law claims premised upon Officers Blake and Nowicki's alleged verbal and physical abuse, harassment, and unlawful arrest without probable cause.  Docket at 1.  On March 15, 2006, Plaintiffs amended their complaint to allege the following civil rights violations under 42 U.S.C. § 1983: (1) excessive force (2) false arrest; (3) violation of substantive due process; and (4) municipal liability.  Docket at 9.  The FAC also alleges the following state law claims: (1) interference with civil rights (Cal. Civ. Code § 52.1); (2) false arrest; (3) false imprisonment; (4) assault; (5) battery; (6) negligent hiring and supervision; and (7) negligence.  Id.  On September 19, 2007, the City filed a motion for summary adjudication. Docket at 22.

## II.  DISCUSSION

**A.  Legal Standard**

Rule 56(b) permits a party against whom a claim has been asserted to "move at any time, with or without supporting

affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). That genuine issue of fact is "material" if it "might effect the outcome of the suit under the governing law." See id. ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party will have the burden of proof on an issue at trial, the movant's burden may be discharged by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. See id. at 325; Miller v. Glenn

<u>Miller Productions, Inc.</u>, 454 F.3d 975, 987 (9th Cir. 2006). The moving party need not disprove the other party's case. <u>Miller</u>, 454 F.3d at 987. "Thus, [s]ummary judgment for a defendant is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." <u>Id.</u> (internal quotation marks omitted and alterations in original).

If the moving party sustains its burden, the burden then shifts to the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. <u>See</u> <u>Celotex</u>, 477 U.S. at 324 (citing Fed.R.Civ.P. 56(e)); <u>Miller</u>, 454 F.3d at 987. This burden requires more than a simple showing that there is some "metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The mere existence of a scintilla of evidence is likewise insufficient to create a genuine factual dispute. <u>Anderson</u>, 477 U.S. at 252. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." <u>Nissan Fire & Marine Ins. Co. v. Fritz</u>

<u>Companies, Inc.</u>, 210 F.3d 1099, 1103 (9th Cir. 2000).  "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." <u>Id.</u>

On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party.  <u>Hector v. Wiens</u>, 533 F.2d 429, 432 (9th Cir. 1976).  The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  <u>Valadingham v. Bojorquez</u>, 866 F.2d 1135, 1137 (9th Cir. 1989).  Where different ultimate inferences may be drawn, summary judgment is inappropriate.  <u>Sankovich v. Insurance Co. of North America</u>, 638 F.2d 136, 140 (9th Cir. 1981).  The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial."  <u>Matsushita</u>, 475 U.S. at 587.  Thus "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  <u>Id.</u>

**B.   Municipal Liability**

The City seeks summary adjudication on the basis that Plaintiffs have failed to produce sufficient evidence to demonstrate that an unconstitutional City policy, custom or

practice was the moving force behind the complained of constitutional injuries.

"Local government entities are considered 'persons' for purposes of § 1983 and can be sued directly for monetary, declaratory, or injunctive relief where 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers.'" Anderson v. Warner, 451 F.3d 1063, 1070 (9th Cir. 2006) (quoting Monell v. Dep't of Soc. Servs. of New York City, 436 U.S. 658, 690 (1978)). A municipality cannot be made liable for a constitutional tort by application of the doctrine of respondeat superior, i.e., liability for constitutional torts cannot be imposed vicariously on government bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor. Pembaur v. City of Cincinnati, 475 U.S. 469, 478 (1986); Anderson, 451 F.3d at 1070. Rather, municipality liability can be imposed only for injuries inflicted pursuant to an official governmental policy. Tanner v. Heise, 879 F.2d 572, 582 (9th Cir. 1989). "To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a section 1983 plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3)

that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" <u>Oviatt v. Pierce</u>, 954 F.2d 1470, 1474 (9th Cir. 1992); <u>Anderson</u>, 451 F.3d at 1070. There also must be a "direct causal link" between the policy or custom and the injury, and plaintiff must be able to demonstrate that the injury resulted from a "permanent and well settled practice." <u>Anderson</u>, 451 F.3d at 1070. In order to be a "moving force" behind a constitutional deprivation, the "identified deficiency" in a local governmental entity's policy must be "closely related to the ultimate injury." See <u>Gibson v. County of Washoe, Nev.</u>, 290 F.3d 1175, 1196 (9th Cir. 2002).[5]

Additionally, a municipal entity may be liable for constitutional violations resulting from its failure to supervise or train, but only where the inadequacy of the supervision and training amounts to deliberate indifference to the rights of persons with whom the police come into contact.

---

[5] In the absence of a formal governmental policy, a plaintiff must show a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." <u>Trevino v. Gates</u>, 99 F.3d 911, 918 (9th Cir. 1996). The custom must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy." <u>Id</u>. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." <u>Id.</u>

9

City of Canton v. Harris, 489 U.S. 378, 388 (1989); Alexander v. City and County of San Francisco, 29 F.3d 1355, 1367 (9th Cir. 1994); see also Anderson, 451 F.3d at 1070 (a failure to train or supervise can amount to a "policy or custom" sufficient to impose liability on a municipality).[6]   A municipality is deliberately indifferent when it is "on actual or constructive notice of the need to train." Farmer v. Brennan, 511 U.S. 825, 841 (1994).   In order to establish a municipal policy on a failure to supervise and train theory, a plaintiff must produce evidence showing that the alleged inadequacy in training was the result of a "deliberate" or "conscious" choice. Canton, 489 U.S. at 389; Alexander, 29 F.3d at 1367.   This heightened degree of culpability on the party of a municipality may be established when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Canton, 489 U.S. at 390.   Finally, a plaintiff must show that the alleged deficiency in supervision and training "actually caused" the constitutional deprivation at issue.   Id.

_____

   [6] While the Canton decision dealt with an alleged failure to train police officers, the same concerns are involved in cases like the instant case, involving alleged failures to discipline police officers. See, e.g., Strauss v. City of Chicago, 760 F.2d 765 (7th Cir. 1985).

at 391.  The appropriate inquiry is therefore whether the injury would have been avoided "had the employee been trained under a program that was not deficient in the identified respect."  <u>Id.</u> Thus, in order to make out a viable claim of inadequate training a plaintiff must show three things: (1) that the existing program is inadequate; (2) that the training policy, or lack thereof, amounts to a "deliberate indifference" to the rights of the people with whom the officials come into contact; and (3) that the deliberate indifference on the part of the municipality actually caused the constitutional violation at issue.  <u>Merritt v. County of Los Angeles</u>, 875 F.2d 765, 770 (9th Cir. 1989).

In the present case, Plaintiffs have submitted Roseville Police Department General Order 2.05 ("General Order 2.05"), entitled "Internal Affairs Investigations," and Roseville Police Department Policy 1019 ("Policy 1019") also entitled "Internal Affairs Investigations,"[7] for the purpose of demonstrating that the City has a policy of condoning the use of excessive force and other police misconduct.  In this regard, Plaintiffs point to nearly identical language in each of these documents stating that a watch commander is authorized to resolve verbal complaints or other inquiries without further action (including

---

[7] Exhs. 1 & 2, attached to Decl. of Manolo Olaso ("Olaso").

11

notifying the Police Chief) where the complaint is "of such a minor nature" that it can be resolved to the mutual satisfaction of all parties.[8]  Plaintiffs maintain that such a policy deprives the City of the opportunity to discover the inadequacy of its training and supervision of officers, and fails to inform the Police Chief of patterns of abuse that need to be addressed.  In other words, Plaintiffs contend that this "deficiency" is the moving force behind the complained of constitutional injuries.  The court disagrees.  The court finds this evidence insufficient to establish a triable issue of material fact as to whether the City was deliberately indifferent to police misconduct and that such indifference caused the complained of constitutional injuries.  The police department's procedure for processing minor complaints, without more, does not demonstrate the existence of a policy whereby meritorious complaints are ignored or improperly disposed of.[9]  Moreover, there is no other evidence

_____

[8]  Policy 1019 provides: "Verbal complaints or inquiries received by the Watch Commander, Support Commander or the Professional Services Unit that are of such a minor nature they can be resolved to the mutual satisfaction of all the parties, no further action need be taken."  Exh. 2, attached to Decl. of Olaso.  Policy 1019 further provides: "if the [verbal] complainant . . . wishes to file a written complaint, the complainant will be given a complaint form."  Id.  General Order 2.05 contains nearly identical language.  Exh. 1, attached to Decl. of Olaso.

[9]  Indeed, the written procedural guidelines of both General Order 2.05 and Policy 1019 provide: "[a]ll complaints involving

before the court suggesting that this is an inadequate procedure resulting in the perfunctorily dismissal of meritorious complaints. As such, there is no basis to infer that the City's written policies amounted to a deliberate indifference to the risk of constitutional injuries and that this deliberate indifference caused the complained of constitutional injuries.

Alternatively, Plaintiffs maintain that municipal liability attaches based on the City's custom of inadequately investigating and disciplining police officers, and that this custom sent a message to Officers Blake and Nowicki that such unlawful behavior would be tolerated, thereby facilitating the officers' unlawful actions against Plaintiffs. Plaintiffs argue that if the City did not have a flawed citizen complaint procedure then it would have discovered a pattern of repeated abuses. The City could have then have remedied this problem, thereby preventing the complained of constitutional injuries.[10] The City, for its part, moves for summary adjudication on the

possible criminal violations shall be referred to the Police Chief's Office." Exhs. 1 & 2, attached to Decl. of Olaso. The procedural guidelines further provide that both minor and serious complaints shall be investigated and the Police Chief shall be advised of serious complaints. Id.

[10] In essence, Plaintiffs contend that the City's custom of inadequate investigation procedures illustrates a deliberate indifference to Plaintiffs' constitutional rights and provided tacit authorization for police misconduct under which Officers Blake and Nowicki acted when they allegedly violated Plaintiffs' constitutional rights.

basis that Plaintiffs have failed to present sufficient evidence to establish a custom on the part of the City rendering the City liable for the complained of constitutional injuries.   In order to survive summary adjudication, Plaintiffs needed to present evidence indicating that the City's officers in general, or Officers Blake and Nowicki in particular, have a pattern of using excessive force and/or engaging in other misconduct, that a responsible policymaker of the City (i.e., Police Chief) was aware or should have been aware of and deliberately chose to ignore.   In this regard, Plaintiffs presented a chart summarizing each and every citizen complaint alleged against Roseville police officers from January 2002 to November 2007 and the action taken on each complaint ostensibly for the purpose of demonstrating that City police officers engaged in a pattern of abuses for which the Police Chief was or should have been aware of and did nothing to remedy.   Exh. 3, attached to Decl. of Olaso.[11]   Plaintiffs rely almost exclusively on this evidence to establish that the City acquiesced in a custom that tolerated

_____

   [11] Essentially, Plaintiffs are asking the court to infer that the City improperly investigated and resolved citizen complaints because only three complaints were sustained from January 2002 to November 2007, and, therefore, the City's police officers, including Officers Blake and Nowicki, believed that their actions would not be scrutinized, thereby facilitating the complained of constitutional injuries.

police misconduct by failing to adequately investigate citizen complaints and discipline officers, thereby demonstrating a deliberate indifference to the risk of constitutional injuries resulting from such abuses.  The court finds this evidence, without more, insufficient to establish a triable issue of material fact as to whether the City had a custom that deprived Plaintiffs of their constitutionally protected rights to be free from the use of excessive force and other police misconduct. The chart, and Plaintiffs statistical arguments based thereon, does not create an inference that the City was deliberately indifferent to Plaintiffs' constitutional rights.  Statistics of unsustained complaints of excessive force and other police misconduct, without any evidence that those complaints had merit, does not suffice to establish municipal liability under § 1983.  See Bryant v. Whalen, 759 F.Supp. 410, 423-24 (N.D. Ill. 1991) (finding that statistical evidence regarding a City's handling of excessive force complaints, without more (such as evidence that complaints which were not sustained actually had merit), is insufficient to establish an inference of deliberate indifference on the part of the City because people may file a complaint for many reasons or for no reason at all); see also Strauss, 760 F.2d at 768-69 (finding statistics insufficient to prove municipal liability because people may file complaints

"for many reasons, or for no reason at all."). Thus, because Plaintiffs did not present any evidence suggesting that more citizen complaints should have resulted in the discipline of police officers or that the City conducted biased investigations or otherwise ignored or improperly disposed of meritorious citizen complaints, Plaintiffs have failed to sustain their burden to present evidence from which a reasonable jury could infer that the City acquiesced in a custom of tolerating police abuses by failing to adequately investigate citizen complaints.

To the extent that Plaintiffs rely on <u>Larez v. City of Los Angeles</u>, 946 F.2d 630, 646 (9th Cir. 1991) (finding that a jury could reasonably find a municipal custom or policy where an expert testified that the Los Angeles Police Department ("LAPD") had routinely exonerated officers and suggested that the investigations of officers were shams) and <u>Beck v. City of Pittsburg</u>, 89 F.3d 966 (3d Cir. 1990) (holding that a pattern of written complaints of violence against an officer was sufficient for reasonable jury to conclude policymaker knew or should have known of violations), in support of their position that a triable issue of material fact exists regarding municipal liability, the court finds such reliance misplaced. Both cases are distinguishable insofar as the plaintiffs in those cases presented evidence from which a reasonable jury could infer that

a municipal custom contributed to the complained of constitutional injuries. First, in <u>Larez</u>, the plaintiffs presented expert testimony that a two year comparative study demonstrated that it was almost impossible for a police officer to suffer discipline as a result of a complaint lodged by a citizen. <u>Larez</u>, 946 F.2d at 647. The plaintiffs' expert witness, "armed with both many years practical police experience and empirical data on police department procedures and operations nationwide and in Los Angeles specifically," testified that he would have disciplined the officers and would have established new procedures so that the violations did not occur in the future. <u>Id.</u> at 646. The plaintiffs in that case also presented expert testimony that the investigation into plaintiffs' complaint was flawed in that it gave the responsibility for investigating the complaint to the unit being investigated and contained holes an inconsistencies that any reasonable administrator should have seen, including reliance on the testimony of an officer not present during some of the relevant incidents. <u>Id.</u> at 647. Under these circumstances, the Ninth Circuit determined that the LAPD's treatment of the Larezes' complaint tended to corroborate the expert's testimony about LAPD complaint investigations in general and that "[t]he jury was entitled to conclude that this evidence supported the

Larezes' theory that the LAPD's disciplinary and complaint processes, executed by policy or custom, contributed to the police excesses complained of because the procedures made clear to officers that, at least in the absence of independent, third-party witnesses, they could get away with anything." Id. Second, in Beck the plaintiff presented evidence of five prior complaints of excessive force against the officer at issue in a relatively short period of time and that none of the complaints resulted in disciplinary action. Beck, 89 F.3d at 973. There, the court stated that because "the complaints, especially [the three between April and July of 1991], came in a narrow period of time and were of similar nature,[12] a reasonable jury could have inferred that the Chief of Police knew or should have known of the [police officer's] propensity for violence when making arrests." Id. (footnote added). In addition, while the complaints were investigated, the Beck court characterized the city's grievance procedures as "superficial" and "structured to curtail disciplinary action," and noted that the investigations resulted in no disciplinary action. Id. at 974. In Beck, the plaintiff also presented evidence that the review process itself

---

[12] All five filed complaints were related to the police officer's use of excessive force while arresting civilians, all five complaints occurred during a period of three years and three months and none of the complaints resulted in disciplinary action. Beck, 89 F.3d at 969-70.

was flawed.  Id. at 968-69.  There, an employee of the Office of Professional Standards ("OPS")-the division that investigated complaints against officers-testified as to the inadequacy of the review process.  Id.  Under these circumstances, the Third Circuit determined that a reasonable jury could conclude that the OPS review policy "was inadequate to protect civilians from police misuse of force."  Id. at 974.  That inadequate policy included the absence of formal procedures to track complaints against individual officers and a procedure to give special consideration to police officers' statements over a complainant's statements.  Id. at 973.  Finally, there was an end of year report, circulated within OPS that acknowledged a problem with excessive force complaints and an inadequacy of the procedures to handle such complaints.  Id. at 974-75.

In this case, as opposed to Larez and Beck, Plaintiffs did not present sufficient evidence from which a reasonable jury could infer that the City had a custom that contributed to the complained of constitutional injuries.  Plaintiffs, for instance, did not present any expert testimony demonstrating that the City is responsible for creating or maintaining a policy whereby civilian complaints are meaningless.  Nor did Plaintiffs present any other evidence demonstrating that the investigations into citizen complaints against police officers

in general, or Officers Blake and Nowicki in particular, were cursory, inadequate or meaningless.[13]   Further, Plaintiffs did not present evidence demonstrating the existence deficiencies and/or improprieties in the police department's investigation procedures, such as evidence that the responsibility for investigating citizen complaints was given to the unit being investigated, as opposed to a separate internal affairs unit,[14] or evidence demonstrating that the investigative process contains holes and/or inconsistencies that any reasonable administrator should have seen (e.g., reliance on testimony of officers not present during the relevant incidents).   Nor did

---

[13] In this regard, Plaintiffs presented evidence of a single written informal complaint alleged against Officer Blake and police department memoranda pertaining to the investigation of this complaint.  Exhs. 4 & 5, attached to Decl. of Olaso.  A review of this evidence reveals that this complaint was not sustained because videotape evidence and the testimony of another officer corroborated the testimony of Officer Blake. Exh. 5, attached to Decl. of Olaso.  In contrast, the plaintiff in Beck presented a series of actual written civilian complaints of similar nature, containing specific information pertaining to the use of excessive force and verbal abuse by a particular officer, not evidence of mere isolated events by a particular officer or mere statistics of the number of complaints alleged against a police department.  See Beck, 89 F.3d at 973-76.

[14] Policy 1019 provides that: "All complaints received in writing will be forwarded to the Professional Standards Unit. The PSU will receive and review complaints and inquiries by contacting the complainant and determining whether a Department member is involved; whether possible criminal misconduct is alleged; and exactly what are the circumstances of the allegation."  Exh. 2, attached to Decl. of Olaso.

Plaintiffs present evidence that the City lacked formal procedures to track complaints against individual officers or that the City had a procedure of giving special consideration to statements made by police officers over statements made by complainants.[15] Finally, Plaintiffs did not present any evidence showing that the Police Chief acted in any way to condone the use of excessive force or other police misconduct against the Plaintiffs or others. Accordingly, because Plaintiffs have failed to present sufficient evidence from which a reasonable jury could infer that the City acquiesced in a custom of tolerating police misconduct by failing to adequately investigate citizen complaints, summary adjudication is GRANTED in favor of the City.

---

[15] To support their position that the City had a policy of giving special consideration to statements made by police officers over statements made by complainants, Plaintiffs presented evidence of an informal complaint alleged against Officer Blake and police department memoranda pertaining to the City's investigation of this complaint. Exhs. 4 & 5, attached to Decl. of Olaso. The court, however, does not find this evidence sufficient to establish a triable issue of material fact as to whether the City had a custom of inadequately investigating citizen complaints. The evidence presented in this regard does not indicate that police officer statements are given special consideration over the statements made by complainants. Rather, the evidence indicates that Officer Blake's statements were credited over the complainant's statements because Officer Blake's version of the events was corroborated by videotape evidence as well as the testimony of a another officer. Exh. 5, attached to Decl. of Olaso.

### III. CONCLUSION

For the reasons stated above, the motion is GRANTED.

**IT IS SO ORDERED.**

ENTERED this 21st day of April, 2008.

s/RALPH R. BEISTLINE
United States District Judge
